1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| LUIS ENRIGUE MELCHOR, on behalf of himself and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FOSTER POULTRY FARMS, INC., a California Corporation, and DOES 1-50, inclusive<br><br>　　　　　Defendant. | 1:12-cv-00339 AWI GSA<br><br>**FINDINGS AND RECOMMENDATIONS RE:  PLAINTIFFS' MOTION TO REMAND ACTION TO STATE COURT**<br><br><br>(Document10) |

## INTRODUCTION

On January 9, 2012, Plaintiff initiated this wage and hour action as a class action in Merced County Superior Court (Case number CV002414).  Plaintiff, and others similarly situated (collectively "Plaintiffs"), alleged six causes of action, including violations of the California Labor Code, for: failure to fully compensate Plaintiffs for all hours worked and for overtime; failure to provide meal and rest periods; recovery of unpaid wages and waiting time penalties; failure to itemize pay stubs; and for unfair business practices under California Business

1

1   and Professions Code §§ 17200, *et seq*.

2        Plaintiffs are production-line employees at Defendant's poultry processing plant in

3   Livingston, California.  They allege Defendant failed to fully and properly compensate them as

4   required by California law for *inter alia*, pre-and post-production-line activities, commonly

5   referred to as "donning and doffing", i.e., putting on and taking off protective gear.   Plaintiffs

6   plead no federal causes of action.   Moreover, Plaintiffs' allegations on their face raise no federal

7   claims, and there is no alleged diversity of citizenship to bring the case within the jurisdiction of

8   this Court.

9        On March 5, 2012, Defendant removed this case to federal court claiming that the

10   allegations in Plaintiffs' complaint brought it within Section 301 of the Labor Management

11   Relations Act (29 U.S.C. § 185(a)) ("LMRA") thereby raising federal questions that are subject

12   to this Court's jurisdiction. (Doc. 1).  In particular, Defendant argues that the Collective

13   Bargaining Agreement ("CBA") between the parties must be interpreted in order to resolve

14   Plaintiffs' claims thereby bringing this case within the parameters of the LMRA.

15        On April 4, 2012, Plaintiffs filed the instant Motion to Remand.  (Doc. 10).  Plaintiffs'

16   contend that their complaint seeks to enforce non-negotiable statutory protections and rights

17   which arise exclusively out of state law and exist independently of the CBA. The Plaintiffs

18   further allege that Section 301 preemption does not result simply because the CBA may be

19   consulted in the course of proving its claim.  Plaintiffs also argue that collateral estoppel bars

20   Defendant from raising this argument because this issue was previously decided in *Avalos v.*

21   *Foster Poultry Farms, Inc*. 798 F. Supp. 2d 1156 (E.D. Cal. 2011), wherein Judge O'Neill

22   recently remanded a nearly identical case.

23        On April 20, 2012, Defendant filed its Opposition to the Motion for Remand.  (Doc. 13).

24   Plaintiffs filed a Reply on April 27, 2012. (Doc. 15).[1]  On May 4, 2012, this Court determined the

25

26        [1]  As part of the Reply, Plaintiff raise several objections to the evidence presented in Defendant's
    Opposition. (Doc. 15.1).  Defendant filed a Response to Plaintiffs' objections.  (Doc. 19).   The Court considered all
27   declarations for purposes of resolving the Motion to Remand.

28                                              2

1  matter was suitable for decision without oral argument pursuant to Local Rule 230(g).[2]  The

2  hearing scheduled for May 4, 2012, was vacated and the matter was taken under submission.

3  (Doc. 18.)

4  **LEGAL STANDARD**

5  ***A.     Preliminary Matters***

6      Plaintiffs have argued that collateral estoppel bars federal jurisdiction of Plaintiffs claims

7  because in *Avalos v. Foster Poultry Farms, Inc*, *supra*, Judge O'Neill remanded a class action

8  alleging the same causes of action involving Defendant.  In *Avalos v. Foster Poultry Farms*,

9  Defendant argued similar issues as it does here, namely that federal jurisdiction was established

10 under the  LMRA because the CBA between the parties needed to be interpreted in order to

11 resolve the claims.

12      The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,

13 which are collectively referred to as "res judicata." *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171

14 (2008) quoting, *New Hampshire v. Maine*, 121 S.Ct. 1808  (2001).   Under the doctrine of claim

15 preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or

16 not relitigation of the claim raises the same issues as the earlier suit." *Id*.  Issue preclusion, or

17 collateral estoppel, in contrast, bars "successive litigation of an issue of fact or law actually

18 litigated and resolved in a valid court determination essential to the prior judgment," even if the

19 issue recurs in the context of a different claim. *Id*.

20      Collateral estoppel applies when : (1) one party against whom the pleas is raised was a

21 party or was in privity with a party to the prior adjudication, 2) there was a final judgment on the

22 merits in a prior action, and 3) the issue necessarily decided in the prior adjudication is identical

23 to the one that is sought to be relitigated. *Af-Cap Inc., v. Cheveron Overseas (Congo) Ltd.*, 475

24 ─────────────────────

25

26      [2]The Court carefully reviewed and considered all of the pleadings, including arguments, points and
   authorities, declarations, and exhibits.  Any lack of reference to an argument or pleading is not to be construed that
27 the Court did not consider the argument or pleading.

28                                         3

1  F. 3d 1080, 1080 (9th Cit. 2007).  Contrary to Plaintiff's argument, Defendant is not collaterally

2  estopped from removing this case to federal court because the issue decided in the prior case is

3  not identical to the one raised here.  As outlined below, a determination of whether the LMRA

4  applies and has a preclusive effect for purposes of establishing jurisdiction is determined on a

5  case-by-case basis.  While the issues presented in *Avalos v. Foster Poultry Farms* are similar to

6  those presented here, the cases are not identical in that the work cite location, the labor unions,

7  and the CBAs are different that those raised in *Avalos v. Foster Poultry Farms*.  Accordingly, the

8  Court will consider Defendant's arguments.

9          ***B.     Removal Generally***

10         Title 28 of the United States Code[3] section 1441(a) provides that a defendant may remove

11  "any civil action brought in a State court of which the district courts . . . have original jurisdiction

12  . . .."  Removal is proper when a case originally filed in state court presents a federal question or

13  where there is diversity of citizenship among the parties and the amount in controversy exceeds

14  $75,000.  *See* §§ 1331, 1332(a).

15         Section 1447(c) provides that "[i]f at any time before final judgment it appears that the

16  district court lacks subject matter jurisdiction, the case shall be remanded."  "The removal statute

17  is strictly construed against removal jurisdiction [and] [t]he defendant bears the burden of

18  establishing that removal is proper."  *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582

19  F.3d 1083 (9th Cir. 2009).  The Ninth Circuit has held that "[w]here doubt regarding the right to

20  removal exists, a case should be remanded to state court."  *Matheson v. Progressive Specialty*

21  *Ins. Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003).

22         A motion to remand is the proper procedure for challenging removal.  *Babasa v.*

23  *LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007).  If a defendant has improperly removed a

24  case over which the district court lacks subject matter jurisdiction, the district court shall remand

25

26         [3]All further statutory references are to the various sections of Title 28 of the United States Code unless

27  otherwise indicated.

28                                          4

the case to the state court.   § 1447(c); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (noting that a district court resolves all ambiguity in favor of remand). However, a district court lacks discretion to remand a case to the state court if the case was properly removed.  *Carpenters S. Cal. Admin. Corp. v. Majestic Hous.*,743 F.2d 1341, 1343 (9th Cir. 1984); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 356 (1988).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule....' " *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).   The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*.  While a defense of preemption, also known as "ordinary preemption," is insufficient to demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir.1996).   Under the complete preemption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).   Section 301 is a federal statute that can have complete preemptive force.   *Avco Corp. v. Aero Lodge No.* 735, 390 U.S. 557, 558–562 (1968).

### C.    Section 301 of the LMRA

Section 301 of the LMRA in relevant section provides the following :

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
28 U.S.C. § 185(a).

In order to determine whether Section 301 preemption applies, an inquiry into whether the asserted causes of action involves rights conferred upon by an employee by virtue of state law, or

5

1   by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted, *Burnside*

2   *v. Kiewit pacific Corp.*, 491 F. 3d 1053, 1059 (9th Cir. 2007).   If however, the claim exists

3   independently of the CBA, it must be determined whether the right is "substantially dependent on

4   the analysis of the CBA."  *Burnside v. Kiewit pacific Corp.*, 491 F 3d at 1059 *citing Caterpillar*

5   *Inc.*, 482 U.S. 394.   "If such a dependence exists, then the claim is preempted by section 301; if

6   not then the claim can proceed under state law."  *Brunside v. Kiewit pacific Corp.*, 491 F. 3d at

7   1059-1060.  The LMRA preempts a state-law claim "if the resolution of [that] claim depends

8   upon the meaning of a collective-bargaining agreement." *Ramirez v. Fox Television Station, Inc.*,

9   998 F.2d 743, 748 (9th Cir.1993) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.

10  399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).   In determining whether section 301

11  preemption applies, "[t]he plaintiff's claim is the touchstone for [the] analysis; the need to

12  interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.

13  If the claim is plainly based on state law, § 301 preemption is not mandated simply because the

14  defendant refers to the [collective bargaining agreement] in mounting a defense." *Cramer v.*

15  *Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir.  2001).  To determine whether a particular

16  right inheres in state law or instead, is grounded in a CBA, a court should consider "the legal

17  character of a claim, as 'independent' of rights under the collective-bargaining agreement [and ]

18  not whether a grievance arising from 'precisely the same set of facts' could be pursued.*"*

19  *Burnside v. Kiewit Pacific Corp.*, at 1060 *citing Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

20          Further, a "reference to or consideration of the terms of a collective-bargaining agreement

21  is not the equivalent of interpreting the meaning of the terms." *Ramirez*, 998 F.2d at 749.

22  "Causes of action that only tangentially involv[e] a provision of a collective bargaining

23  agreement are not preempted by section 301.  Nor are causes of action which assert

24  nonnegotiable state-law rights ... independent of any right established by contract." *Id*. at 748

25  (citations and internal quotation marks omitted).   Thus, as the Ninth Circuit observes, "[t]he

26  demarcation between preempted claims and those that survive § 301's reach is not ... a line that

27

28                                                6

1  lends itself to analytical precision." *Cramer*, 255 F.3d at 691. " 'Substantial dependence' on a

2  CBA is an inexact concept, turning on the specific facts of each case, and the distinction between

3  'looking to' a CBA and 'interpreting' it is not always clear or amenable to a bright-line test." *Id.*;

4  *Gregory v. SCIE, LLC.*, 317 F. 3d 1050, 1052 (9th Cir. 2003 ) (Section 301 only preempts state

5  law claims when plaintiff's allegations are "substantially dependent" on an interpretation of the

6  CBA.).

7                              **DISCUSSION**

8            ***Summary of the Parties' Positions***

9            In support of the removal, Defendant argues that Plaintiffs' claims are substantially

10  dependent upon finding that production-line employees' donning/doffing time exceeds the

11  compensation they received for those activities.  It asserts that Plaintiffs' claims do not just

12  require a determination of how much total compensation production-line employees received, but

13  rather a determination of how much their compensation constituted payment for their

14  donning/doffing time.  In order to make this determination, Defendant contends that it is

15  necessary to review and interpret the CBA between Defendant and the League of Independent

16  Workers IAM-AW, Local 2005.[4]  In particular, section 5.6 of the CBA addresses compensation

17  for donning/doffing time and provides the following :

18        **5.6** Time allowed for employee donning and doffing of protective equipment and clothing, shall be as
          follows, commencing the first pay period in September, 2006:
19

| Department | Allocated Minutes Per Day | Department | Allocated Minutes Per Day |
|---|---|---|---|
| Live Hang | 1.5 | Cut Up Line | 3.5 |
| Re-hang Packaging | 2.0 | Thigh Debone | 5.0 |
| Drum/Thigh | 1.5 | Deli-Old Pack Out | 1.5 |
| Split Breast | 2.0 | Deli-New Pack | 1.0 |
| Fillet Line | 3.0 | Deli-Old Fryer Line | 4.0 |
| Wing Line | 3.0 | Deli-New Fryer Line | 1.0 |

24        The foregoing allocated minutes will be granted during employees' regular working hours. In the event

25  _____

26        [4]  There are two CBAs that are relevant to this discussion : one CBA dated May 15, 2005 to October 31,
     2008, and the current CBA which is dated November 1, 2008 to October 31, 2012.  Copies of the CBAs are attached
27  as Exhibits 2 and 3 to the declaration of Maria Silveira dated March 5, 2012.  (Doc. 1.2).

28                                  7

work time and donning and doffing time exceeds eight (8) hours, such time in excess thereof shall be paid at the rate of one and one-half (1½) times the straight time rate of pay.

Defendant contends that this provision of the CBA cannot be read alone but must be interpreted in light of extrinsic evidence showing that the "allocated minutes" in Section 5.6 does not reflect all compensation that employees received for donning/doffing.  In particular, Defendant asserts that the parties understood that production-line employees were paid for two fifteen minute rest breaks above the required ten minutes per day thus receiving ten extra minutes of paid break time to compensate them for donning/doffing activities.  Because of this longstanding practice, the amount of time employees were given for donning and doffing cannot be determined by looking at payroll and time records because these records do not reflect all of the employees' compensated donning/doffing time.  Thus, the CBA must be interpreted in light of these negotiations and the longstanding employment practices in order to accurately determine the amount of compensation employees received.

Additionally, Defendant contends that the departments identified in Section 5.6 do not include certain departments, such as the Evisceration Department.  Defendant contends that as part of the contract negotiations, Foster Farms agreed not to provide those employees with additional compensation (in addition to what they were already receiving) for donning and doffing.  Defendant contends that in March 2009, the League and Foster Farms entered into a Letter of Understanding modifying the departments identified in Section 5.6.  (Doc. 13-2 at Exhibit 4).  Since there is no integration provision in the CBA, Defendant argues that this is extrinsic evidence that would need to be evaluated in order to properly interpret Section 5.6.  This requires that the Court apply principles of classic contract interpretation.

Finally, Defendant argues that several other provisions of the contract would need to be interpreted including : (1) determining how much class members in the training pool should be compensated for donning and doffing; and (2) defining exactly what "donning and doffing of protective clothing" means.  Specifically, whether Section 5.6 includes time for the entire day or only part of the day, as well as determining whether this section was meant to include additional

8

1   time, such as walking and cleaning up as part of the donning and doffing.

2         Plaintiffs argue that Defendant has failed to meet its heavy burden to justify removal as

3   the complaint does not reference the CBA, and none of the statutory protections allegedly

4   violated by Defendant arise as a result of the CBA.  Plaintiffs further contend that since the

5   statutory violations exist independent of the CBA, interpretation of the CBA is not required and

6   preemption does not apply. Furthermore, Plaintiffs argue that work activities are defined by state

7   law and determining whether Plaintiffs were compensated can only be answered through

8   examining punch records, pay records, and testimony of class members and the management.

9         ***Analysis***

10        The Ninth Circuit has set forth a two-step inquiry into whether Section 301 preempts a

11  state law claim. *Burnside,* 491 F.3d at 1059.  First, the Court determines "whether the asserted

12  cause of action involves a right conferred upon an employee by virtue of state law, not by a

13  [collective bargaining agreement]." *Id.*  "If, however, the right exists independently of the"

14  collective bargaining agreement, a court must "still consider whether it is nevertheless

15  'substantially dependent on analysis of a collective-bargaining agreement.' " *Id.* ( quoting

16  *Caterpillar*, 482 U.S. at 394, 107 S.Ct. 2425).  Neither party disputes that California law requires

17  that workers be paid for hours worked.  Therefore, the focus of this inquiry is on the second step

18  which is: whether Plaintiffs claims are "substantially dependent on analysis of [the CBA]."

19  *Caterpillar*, 482 U.S. at 394, 107 S.Ct. 2425.  The Court concludes they are not.

20        Although Defendant has argued that provisions of the CBA must be interpreted and

21  requires the evaluation of extrinsic evidence, the Court disagrees.  The CBA addresses matters

22  such as wages and working conditions, but it cannot extinguish basic labor rights codified in the

23  California Labor Code.  California law gives workers a non-negotiable right to be paid for all

24  hours worked.  California Labor Code §§ 200, 204, 510.  Moreover, neither party disputes that

25  workers are entitled to compensation for their donning and doffing activities.  Thus, the question

26  in this class action is whether Plaintiff and class members were *actually* paid for the donning and

27

28                                        9

1  doffing time, regardless of what the CBAs, or any  Letter of Understanding modifying the CBA

2  states about these activities.

3       For example, even if Defendant were correct in asserting the CBA included ten extra

4  minutes of break time in addition to the minutes allocated in Section 5.6 to compensate workers

5  for donning and doffing time, this would not prove that class members were actually paid for all

6  the time that they were entitled to which is the issue presented here.  The Court agrees with

7  Defendant's statement that time records and punch cards alone cannot answer that question,

8  however, the question can be answered through an examination of this evidence in conjunction

9  with testimony of witnesses.

10      The Court is not persuaded by Defendant's argument that this case is similar to *Firestone*

11  *v. Southern California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000).  In *Firestone*, plaintiffs disputed

12  whether the defendant paid plaintiffs a premium rate for hours worked beyond eight hours per

13  day, as required under California law.  The defendants paid the plaintiffs a flat rate for their work

14  during a regular-time shift based on multiple factors set out in the CBA. *Firestone*, 219 F.3d at

15  1063.  The court held that to determine whether the defendant paid plaintiffs a premium rate, it

16  had to interpret the "complex pay and overtime provisions" in the collective-bargaining

17  agreement to determine whether Defendant had violated state labor laws.  *Id*. at 1064-1066.  Due

18  to the complexity of converting plaintiffs' regular flat rate to an hourly rate, the court held that the

19  CBA had to be interpreted; and Section 301 preempted plaintiffs' claims. *Id*. at 1066.  This is not

20  the case here.  Section 5.6 of the CBA indicates that if donning and doffing time exceeds eight

21  hours, the excess time is to be calculated by one and one-half (1 ½) times the straight rate of pay.

22  There is also no complex pay formula, nor does Plaintiffs' complaint contain a challenge to the

23  formula outlined in the CBA.  The other sections of the CBA related to the calculation of

24  workers' pay is also clear and indicates that a work week is comprised of forty hours, and all

25  hours worked in excess of forty hours will be paid at the rate of one and one-half the straight rate

26  of pay.  (CBA at Sections 5.1, 5.3-5.5).

27

28                                          10

1    Similarly, the Court is not persuaded by Defendant's reliance on *Carter v. Tyson Foods,*

2  *Inc.*, 2009 WL 4790761 (N.D. Ind., Dec. 3, 2009).  This case was not a removal case but

3  involved a motion to dismiss state labor law claims.  In *Carter*, Defendant argued that the LMRA

4  preempted state law wage claims because resolution of the case required an interpretation of

5  numerous provisions of the CBA.  This evaluation entailed examining *inter alia*, numerous

6  sections of the CBA that defined work, and contained a detailed matrix for determining rates of

7  pay for Tyson employees, as well as rules regarding pay structures for call back employees.  *Id* at

8  *2.  The Court found preemption.  In reaching this conclusion the court noted that, "the CBA in

9  this case is complete with numerous provisions that define work time and delineate the means for

10 calculating applicable wage and overtime rates.  *Id*. at*7.

11   In the instant case, Defendant has not presented any evidence that a complex formula for

12 determining compensation or wages exists.  The Ninth Circuit has clearly established that "[a]

13 state law claim is not preempted under 301 unless it necessarily requires the Court to interpret an

14 existing provision of a CBA that can be reasonably said to be relevant to the resolution of the

15 dispute."  *Cramer v. Consolidated Freightways, Inc*. 255 F. 3d 683, 693 (9th Cir. 2001).

16 Although Defendant has argued that interpretation of provisions of the CBA is required, it

17 appears that the CBA may be consulted, but the resolution of this case will be determined

18 through an evaluation of other evidence.  The removal statute is strictly construed against

19 removal jurisdiction and where there is doubt that removal is appropriate, a case should be

20 remanded to state court." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d at

21 1083;  *Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d at 1089.  The burden in a removal

22 case on Defendant is high.   In this instance, Defendant has not met this burden as it has not

23 established that the outcome of this case is *substantially* dependent on an analysis the CBA.

24 Accordingly, it is recommended that the Motion to Remand be granted.

25                                    **RECOMMENDATIONS**

26   For the reasons stated above, this Court recommends that Plaintiff's Motion To Remand

27

28                                             11

1    Action to State Court be GRANTED in its entirety.

2          These findings and recommendations are submitted to the district judge assigned to this

3    action, pursuant to Title 28 of the United States Code section 636(b)(1)(B).  Within fifteen (15)

4    days of service of this recommendation, any party may file written objections to these findings

5    and recommendations with the Court and serve a copy on all parties.  Such a document should be

6    captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district

7    judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of

8    the United States Code section 636(b)(1)(C).  The parties are advised that failure to file

9    objections within the specified time may waive the right to appeal the district judge's order.

10   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11         IT IS SO ORDERED.

12   **Dated:    May 21, 2012**              _____/s/ **Gary S. Austin**_____
                                            UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            12